UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CLAYTON C. C. WHEAT, individually : | |
| and as next friend of ZACHARY WHEAT : | |
| and CRAIG WHEAT, and JENNIFER : | No. 3:08-cv-635 (CFD) |
| WHEAT : | |
| : | |
| v. : | |
| : | |
| UNITED STATES TRUST CO., N.A. : | |
| : | |

## RULING ON DEFENDANT'S MOTION TO DISMISS AND ON MOTION TO INTERVENE BY STEPHEN B. KEOGH

This is a diversity action filed by Clayton C. C. Wheat and Jennifer Wheat, putative beneficiaries of three trusts for which the original beneficiary was Mary Chappell Wheat, their mother. The trusts are administered by the defendant trustee, United States Trust Company, N.A. (the "Trust Company") which is a citizen of New York. The plaintiffs are citizens of Connecticut and Hawaii. Stephen B. Keogh, the administrator of the estate of Clayton E. Wheat, Jr., who was Mary Chappell Wheat's spouse, has made a motion to intervene in order to pursue the rights of the estate of Clayton E. Wheat, Jr. in the trusts. [Dkt. # 25].[1] Keogh is also a citizen of Connecticut. The Trust Company has made a motion to dismiss or stay (1) for failure to join required parties and (2) pursuant to the doctrine of abstention, arguing that the New York County Surrogate's Court is the appropriate forum for this action [Dkt. # 16, Dkt. # 19]. The Court finds that Keogh is a necessary party but that he is properly joined as a defendant rather than as a plaintiff. Because realigning the parties according to their real interests would destroy diversity

---

[1]The parties agree that Keogh should be permitted to intervene as a party, but they disagree as to whether he should intervene as a plaintiff or as a defendant.

-1-

jurisdiction, the case is dismissed.[2]

**I.  Background**

In the 1930s, Mary R. Chappell created three trusts of which the Trust Company was trustee.[3] Pursuant to the trust indentures, Mary R. Chappell transferred certain property to the trustee to pay the income ultimately to her granddaughter Mary Chappell Wheat (then known as Mary Chappell) during her life. Each of the trust indentures provides that upon the death of Mary Chappell Wheat the remainder of the trusts will be distributed to such persons appointed by Mary Chappell Wheat's will or by an instrument of appointment executed by Mary Chappell Wheat during her life.

At issue in the present case are the claims of Clayton C. C. Wheat[4] and Jennifer Wheat, who are Mary Chappell Wheat's children. They claim they are beneficiaries of the trusts through the will of Mary Chappell Wheat. However, the intervening party, Stephen B. Keogh as administrator of the estate of Clayton E. Wheat, Jr., claims that Mary Chappell Wheat exercised her power of appointment during her life (on October 2, 2002) in favor of her husband, Clayton E. Wheat, Jr. The determination of who is entitled to the assets of the three trusts (and in what

---

[2] Although the issue of possible Colorado River abstention has been raised, the Court declines to rule on that basis. See Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).

[3] Defendant United States Trust Company, N.A. is a successor to United States Trust Company of New York, which was the original trustee.

[4] Clayton C. C. Wheat's claim is on his own behalf and on behalf of his two sons, who (like Clayton C. C. Wheat and Jennifer Wheat) are mentioned in Mary Chappell Wheat's will dated December 20, 2006. The will was admitted to probate by the Probate Court for the District of Stamford, Connecticut.

percentages) depends on whether Mary Chappell Wheat properly exercised her powers to appoint remainder beneficiaries during her life or in her will.  The parties and other claimants (including Keogh, as administrator of the estate of Clayton E. Wheat, Jr.) have taken opposing positions on this issue.  Regardless of what distribution ultimately controls, the Trust Company will be required to distribute the assets and will presumably retain from those assets any fees to which it is entitled.  The plaintiffs brought this action in federal court pursuant to diversity jurisdiction, alleging that the Trust Company has wrongfully withheld the trust assets since the death of Mary Chappell Wheat.  They seek a writ of replevin against the Trust Company directing it to turn over "all funds, property and reinvestments held and acquired by it" under the terms of the trusts, which the complaint characterizes as "contracts."  The plaintiffs assert that they have a common claim against the Trust Company with respect to distribution of the trust assets.

After the commencement of the action in federal court, the Trust Company initiated a trust construction proceeding in the New York County Surrogate's Court, which has *in rem* jurisdiction over the trusts and their assets, seeking a determination by that court regarding whether powers of appointment were validly exercised by the income beneficiary and how the trusts' assets should be distributed.  The Trust Company will not distribute the trust assets without some judicial resolution of the dispute between the parties claiming rights to the assets.  It has moved to dismiss this case based on the failure to join necessary parties, or to stay it pending resolution of the underlying dispute as to trust asset distribution in the New York Surrogate's Court.  Stephen B. Keogh has made a motion to intervene in order to pursue the rights of the estate of Clayton E. Wheat, Jr. in the trusts.  No other claimants of the trust assets have moved to intervene.  Oral arguments on these motions were held on October 17, 2008.

**II.    Applicable Law**

Diversity jurisdiction requires that every plaintiff in a civil case be a citizen of a different state than every defendant. 28 U.S.C. § 1332. A corporation's citizenship is deemed to be that of the state in which it is incorporated and that of the state where it has its principal place of business. 28 U.S.C. § 1332(c).

Diversity jurisdiction cannot be gained by collusion. 28 U.S.C. § 1359 provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." Id. The Supreme Court has held that the plaintiffs' alignment of parties is not determinative; a federal court, in determining whether there is complete diversity, should realign parties according to their real interests. Indianapolis v. Chase Nat'l Bank, 314 U.S. 63 (1941). A federal court must "look beyond the pleadings and arrange the parties according to their sides in the dispute." City of Dawson v. Columbia Ave. Sav. Fund, 197 U.S. 178, 180 (1905). "The purpose of realignment is to ensure that the case truly involves the kind of adversarial relationship constitutionally required in a case or controversy in the federal courts." Maryland Casualty Co. v. W.R. Grace and Co., 23 F.3d 617, 622 (2d Cir. 1994) (quoting 1 James W. Moore et al., Moore's Fed. Practice, para. 0.74[1], at 771).

The Second Circuit has adopted the "collision of interests" test for determining whether realignment of parties is appropriate. Under this test, there must be an "actual, substantial controversy, or a collision of interests" between the plaintiff and the defendant, but "the conflict may in some cases concern an issue other than the so-called primary issue in dispute." Maryland Casualty Co., 23 F.3d at 622. The Second Circuit has noted that the collision of interests

approach is consistent with the Supreme Court's "chief concern" in Indianapolis that "parties not manipulate alignment to manufacture diversity jurisdiction." Id. at 623. "That Court directs us to examine 'the realities of the record' to discover the 'real interests' of the parties." Id. (quoting Indianapolis, 314 U.S. at 69). There must be a *bona fide* controversy between citizens of different states. Id. "Hypothetical conflicts manufactured by skillful counsel must not control because such an approach would reintroduce the notion of gamesmanship so disparaged by the Supreme Court." Id.

## III. Discussion

At its core, this case is a dispute as to the proper distribution of the assets of the three trusts of whom Mary Chappell Wheat was the original income beneficiary. The central dispute is between Clayton C. C. Wheat, Jennifer Wheat, and any other claimants of the trust assets (including Keogh, as administrator of the estate of Clayton E. Wheat, Jr.), whether by virtue of their rights under the provisions of the trusts themselves, or by virtue of their rights under the will of Mary Chappell Wheat or the Connecticut intestacy statutes. As such, it is properly in federal court only on the basis of its technical satisfaction of the requirements of diversity jurisdiction, which results from the plaintiffs' characterization of their claims as adverse to that of the Trust Company holding the assets. All of the principal claimants to the trust assets, with the exception of the Trust Company holding those assets pending distribution, are citizens of Connecticut. The traditional justification underlying diversity jurisdiction, *i.e.*, the protection of out-of-state residents from the bias they might experience in state courts, has no application here.

However, under the "collision of interests" test that applies in the Second Circuit, this Court must consider whether there is an "actual, substantial controversy" between the plaintiffs

and the defendant in determining whether complete diversity exists. *Any* "actual" and "substantial" controversy will sustain diversity jurisdiction - it is not required that the actual controversy be the central or the only controversy that might be present between the parties to the dispute. Thus, the fact that a greater and more significant controversy exists between co-plaintiffs does not automatically divest them of the right to bring a case in federal court against a diverse defendant, so long as they have an "actual" and "substantial" dispute with that defendant.

No such controversy exists between the plaintiffs and the Trust Company, particularly after Keogh is added as an intervening party. The plaintiffs assert that they should all be aligned against the defendant because their complaint states only that the Trust Company breached a contract that required it to distribute the trust assets upon Mary Chappell Wheat's death, and the Trust Company wrongfully withheld those assets from them. This characterization of the dispute is incomplete and inaccurate, as it fails to acknowledge the responsibilities and applicable law stemming from the fact that the contracts in question were contracts for the administration of trusts.[5] More importantly, there is no *bona fide* dispute between the Trust Company and the plaintiffs as to the necessity of distributing the trust assets to the proper beneficiaries. The only dispute between the Trust Company and the claimants stems from the Trust Company's refusal to distribute the assets before the task of interpreting the trusts' provisions and the provisions of Mary Chappell Wheat's will is completed and the proper recipients and distribution amounts are determined. Assuming *arguendo* that the addition of Keogh as an intervening party brings all

---

[5]The Trust Company correctly points out that a proceeding in this Court would impair the rights of other (non-party) claimants, could subject the Trust Company to the risk of inconsistent obligations and could result in unnecessary litigation where the New York County Surrogate's Court has jurisdiction over the trusts themselves.

potential claimants into the litigation, it becomes even more clear that there is no true dispute between the Trust Company on the one hand and the group of beneficiaries on the other. The controversy between these claimants and the Trust Company is neither "actual" nor "substantial" within the meaning of the "collision of interests" test.

As the courts have repeatedly held, the plaintiffs' alignment of parties is not determinative. This Court has the authority and the responsibility to realign the parties according to their real interests. The real "collision of interests" here is between plaintiff Clayton C. C. Wheat, plaintiff Jennifer Wheat, and intervenor Stephen Keogh (whom this Court finds is a necessary party). Allowing Keogh to intervene and aligning him as a defendant in accordance with the true "collision of interests" against competing claimants Clayton C.C. and Jennifer Wheat, destroys this Court's jurisdiction over the case.

It is worth noting that once the competing claims of Clayton C.C. Wheat, Jennifer Wheat, and Keogh have been resolved in the appropriate court, there may or may not be an actual and substantial claim against the Trust Company with respect to its fees or its execution of the distribution of assets, and that claim may properly be before the federal courts pursuant to diversity jurisdiction. Such a claim has not yet materialized.

**IV.    Conclusion**

For the foregoing reasons, the Motion to Intervene [Dkt. # 25] is GRANTED, and the intervenor is realigned as a defendant.  Because under this realignment complete diversity is not present, the Motion to Dismiss [Dkt. # 16, Dkt. # 19] is GRANTED.[6]   The Clerk is ordered to close this case.


**SO ORDERED** this 4th day of November 2008, at Hartford, Connecticut.


   /s/ Christopher F. Droney
CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE

---

[6] No motion to remand to the Connecticut Superior Court has been filed.